MARTÍN ANTONIO SABELLI - SBN 164772
Law Offices of MARTIN SABELLI
740 Noe Street
San Francisco, CA 94114-2923
(415) 298-8435
msabelli@sabellilaw.com

Attorneys for SIMON SAGE YBARRA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> SIMON SAGE YBARRA, et al., <br><br> Defendants. | Case No. CR-21-121-JD <br><br> **SIMON SAGE YBARRA'S OPPOSITION TO THE GOVERNMENT\S MOTION TO REVOKE PRETRIAL RELEASE** |

**SAGE YBARRA'S OPPOSITION TO THE GOVERNMENT'S MOTION TO REVOKE  PRETRIAL RELEASE**

## I. INTRODUCTION

Simon Sage Ybarra does not pose a danger to the community unless one presumes him guilty of the charges in the Indictment. In fact, Mr. Ybarra has already demonstrated respect for this Court's Orders, compliance with supervision by United States Pre-Trial Services (USPTS), and obedience to the directions of his custodians, Bill and Christy Kasje, with whom he resides. Indeed, Mr. Ybarra's conduct on pre-trial release suggests that this Court can rely on the conditions already imposed to ensure Mr. Ybarra's respect for, and strict adherence to, this Court's orders.

In this respect, as the Government will verify, Mr. Ybarra informed the Government, after being released from custody, that two legally purchased firearms were being held for him by a licensed dealer in the Sacramento area. Mr. Ybarra did not speak in generalities; rather, he gave specifics which he understood might later be used against him and he did so because he understood the Court's expectations that he would not possess a firearm even in the most remote sense of the word.[1] This admission, through counsel, reflects the sobering effect of an Indictment on the *developing* mind of 23 year old and suggests, strongly, that he has every intention to honor this Court's mandates. Given the implications of this admission for his defense, Mr. Ybarra's admission is as courageous as it unusual.

This admission, in the context of the support of his family and his compliant conduct on release, strongly suggests that this Court can fashion conditions of release that will ensure the safety of the community. In this respect, when assessing the magnitude of any threat an accused poses to the Government's "regulatory" interest in detention, "the proper focus is not on how

---

[1] Mr. Ybarra conveyed, though counsel, that he had purchased two handguns but never took possession of them. He also provided the name and address of the licensed dealer.

**SAGE YBARRA'S OPPOSITION TO THE GOVERNMENT'S MOTION TO REVOKE PRETRIAL RELEASE**

1

big that threat would be if the accused were released on no conditions, but, instead, the focus should be on how big that threat would be if the accused were released on stringent conditions aimed at reducing as much as possible the likelihood of harm to the threatened regulatory interests." *United States v. Ailemen*, 165 F.R.D. 571, 580 (N.D. Cal. 1996). For "[i]t is only by focusing on the actual conditions of release, and what those conditions would contribute to *reducing* the threat of harm to the government's regulatory interests, that courts can accurately assess how much continued imprisonment would contribute to achieving the government's regulatory goals." *Id.* (footnote omitted).

Here, as Mr. Ybarra and his guardians have already demonstrated, this Court can achieve the government's "regulatory" interest while respecting Mr. Ybarra's right to be presumed innocent,[2] his Due Process right to be free of punishment without conviction, and his right to Effective Assistance which is seriously undermined by pre-trial detention.[3] This Court has, can, and should use the arsenal at its disposal – including home detention, curfews, monitoring, etc. – to ensure that Mr. Ybarra has a fair chance to defend himself on release against charges which will deprive him of his liberty should he be convicted.

---

[2] The presumption of innocence is a concept "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *United States v. Ailemen*, 165 F.R.D. 571, 578 (N.D. Cal. 1996).

[3] Pre-trial detention must be considered in relation not only to Due Process but also in relation to Effective Assistance. *United States v. Gallo,* 653 F. Supp. 320, 335 (E.D.N.Y 1986). In the words of Chief Judge Jack Weinstein:

> The quality of the detainee's legal defense is likely to diminish dramatically as long as he or she is incarcerated. The interlude between arraignment and trial is "perhaps the most critical period of the proceedings ... when consultation, thorough-going investigation and preparation .... [are] vitally important...." *Powell v. Alabama,* 287 U.S. 45, 57 (1932). *Gallo* at 336.

SAGE YBARRA'S OPPOSITION TO THE GOVERNMENT'S MOTION TO REVOKE  PRETRIAL RELEASE

## II.     Mr. Ybarra Has Strong Ties to the Community.

Mr. Ybarra has resided with Christy and Bill Kasje since age 13 as a consequence of negligence by his biological mother who had rescued Mr. Ybarra from living on the street with his biological father when Sage was 4 years old. The Kasjes obtained legal permanent guardianship shortly after he came to live with them and are profoundly committed to helping Mr. Ybarra navigate his situation in a way that will allow him to live a full and lawful life. Mr. Ybarra respects their guidance and appreciates their support and, in the context of the charges the Kasjes are aware of the need for heightened support and supervision.

## III.    Mr. Ybarra's Release Plan is Sufficient to Assure the Safety of the Community.

Mr. Ybarra has a family and a home and is seeking employment. He has already had an interview with a construction firm in his area. He is amenable to restrictions on his internet access and to electronic monitoring. His parents have agreed to monitor him closely and act as custodians. His parents were not aware of the alleged activities before his arrest but have been sensitized now to the need to closely supervise Mr. Ybarra. Bill is an expert in internet security and, having been sensitized to the issues framed in the case, can and will monitor Mr. Ybarra's communications.

## IV.     Mr. Ybarra Did Not Flee Even After Being Contacted By the FBI.

The FBI contacted Mr. Ybarra before his arrest. In fact, the FBI started contacting Mr. Ybarra (approximately) in August 2020. Mr. Ybarra met with FBI agents numerous times before his arrest (without requesting counsel) and did not flee. *This conduct does not square with the Government's characterization of his mindset.* He did move to Davis for an employment opportunity but did not change his telephone or conceal his identity, location, or residence. In brief, Mr. Ybarra demonstrated compliance with law enforcement – beyond that which is mandated – even before his arrest.

**SAGE YBARRA'S OPPOSITION TO THE GOVERNMENT'S MOTION TO REVOKE  PRETRIAL RELEASE**

3

## V. CONCLUSION

Sage Ybarra does not pose a danger to the community and certainly not by clear and convincing evidence unless one presumes him guilty of the charges. This Court can and should continue release on the conditions already imposed because, as reflected in Mr. Ybarra's conduct on release, these conditions "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

Dated: April 28, 2021

                                          */s/ Martín A. Sabelli*
                                          MARTIN ANTONIO SABELLI
                                          Attorney for Simon Sage Ybarra