MARTIN ANTONIO SABELLI
(SBN CA 164772)
Law Offices of MARTIN SABELLI
740 Noe Street
San Francisco, CA 94114-2923
(415) 298-8435
msabelli@sabellilaw.com

Attorneys for SAGE YBARRA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAGE YBARRA,<br><br>Defendants. | **Case No.:** CR 21–121- JD<br><br>**SAGE YBARRA'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE** |

Sage Ybarra profoundly regrets his participation in the "Grizzlies" and his role in the obstruction of justice. He regrets his failure to perceive the danger posed by the "Grizzlies" and his failure to alert law enforcement to that danger before his arrest.[1] Since his arrest, Mr. Ybarra has done everything in his power to find community and self-worth in work, education, and family and to chart the right course in his life – a remarkable achievement in introspection for a 24 year old whose life has been characterized, as described below, by extreme psychological abuse punctuated by physical abuse.

## I. INTRODUCTION

Mr. Ybarra seeks a sentence of probation and home confinement in contrast to the five-month sentence recommended by the United States Probation Office and the twelve-month custodial sentence requested by the Government. Mr. Ybarra has resolved all objections to the Pre-Sentence Report (PSR) and concurs with the calculations of the United States Sentencing Guidelines in the PSR.

## II. SAGE YBARRA SUFFERED EXTRAORDINARY PSYCHOLOGICAL TRAUMA DURING CHILDHOOD.

Thanks to the matter hand, Sage Ybarra has been compelled to examine the relationships he had established and the path he had embarked upon before his arrest in this matter on April 8, 2021. At the time of his arrest, Sage Ybarra had not yet reached his 24th birthday – well before frontal lobe development for males and, in his case in particular, development interrupted by a well-documented history of psychological abuse punctuated by physical and sexual abuse from his biological parents, grandfather, and his stepfather (not his current legal guardians). PSR ¶ 58-72, 77.

Mr. Ybarra has shared his personal history of abuse with the United States Probation Officer who

---

[1] Mr. Ybarra did, however, alert the Government to the existence of two firearms shortly after his arrest despite the fact that this evidence could have been used to further incriminate him. Exhibit A (Sabelli Email dated April 14, 2021).

SENTENCING MEMO & MOTION FOR VARIANCE
SAGE YBARRA 21 CR 121-JD

has comprehensively laid out that abuse in the PSR. PSR ¶ 58-72, 77. Mr. Ybarra asks this Court to consider this history of abuse – often characterized in the modern literature as "adverse childhood experience" – not to garner sympathy but because understanding this history of abuse allows the Court to appreciate the factors that drove Mr. Ybarra to make the mistakes he made as well as the reliability of his current transformation.[2] The extraordinary psychological chaos, confusion, and abuse that he suffered in his childhood fueled his sense of not belonging as well as his sense of vulnerability and therefore the drive that Mr. Ybarra felt to belong to the "Grizzlies" community. This dynamic, of course, is not uncommon; many young men feel compelled to join "gangs" in the absence of familial or community support. Young men neglected by their families – or *affirmatively rejected* by family in Mr. Ybarra's case – exhibit well-document vulnerabilities to groups like the "Grizzlies" that promise community, structure, and, ultimately, a false sense of self-worth.

This extraordinary psychological chaos, confusion, and abuse may also assist the Court in understanding how Mr. Ybarra has, in this short time, been able to initiate an impressive personal transformation. This transformation has been noted not only by his legal guardians, *see* Exhibit B (Letter of Bill and Christy Kasje), but is also reflected in his record of employment, education, compliance with Court Orders, and cooperation with the Government since his arrest. PSR ¶ 73, 82, 84; Exhibit A. Over the last year, Mr. Ybarra has been working regularly in the construction trade, *see* Exhibits C (Letter of Christine Ortega) and D (Letter of Erik Larson), and studying regularly at

---

[2] Paragraph 80 of the PSR reflects a score of 9 of 10 regarding Adverse Childhood Experiences (ACEs):

> The defendant was provided with a self-assessment, Adverse Childhood Experiences (ACEs), at the time of the presentence interview. ACEs consists of ten questions that evaluates traumatic events involving abuse, neglect, and household dysfunction that occur during childhood (prior to age 18). Based on the defendant's responses, the result was nine (9) out of 10. The higher the ACEs score, the higher the defendant's risk for major chronic health, mental health, economic health, and social health issues.

DeAnza College, *see* PSR ¶ 82. He has also developed plans to manufacture emissions-compliant parts for classic cars. *See* E (Statement of Sage Ybarra). Despite his history of trauma, he has his eyes on the prize – a lawful and fulfilling life based on work, education, and family.

### III. A SENTENCE OF PROBATION FUFLFILLS THE OBJECTIVES OF A FAIR, RATIONALE, AND HUMANE CRIMINAL LEGAL SYSTEM.

Based on this transformation and based on the importance of the adverse childhood experiences he suffered, Mr. Ybarra asks this Court to impose a sentence of probation and home detention. A sentence of probation would allow Mr. Ybarra to follow through with the hard work he has done since his arrest to set the right course in his life thereby promoting the interests of the community and the rehabilitative objectives of our sentencing regimen. In contrast, a custodial sentence would simply interrupt Mr. Ybarra's progress without contributing in any way to the public interest; a custodial terms would prioritize punishment over common sense and humanity – an instinct which has led us to overcrowded prisons during an epidemic and mass incarceration over the last four decades.

**A. The Parties and United States Probation Office Agree Regarding the Guidelines Calculation.**

The United States Probation Office ("Probation") accurately calculates the United States Sentencing Guidelines in the PSR, and it is consistent with the plea agreement. PSR ¶¶ 39–49; Dkt. No. 84 ¶ 7. Because the total offense level is 11 and the defendant's criminal history category is I, the sentencing range under the Guidelines is 8 to 14 months of imprisonment. PSR ¶ 90.

**B. The § 3553 Factors Support a Sentence of Probation and Home Detention.**

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider four factors which, undersigned counsel submits, support a sentence of probation and home detention:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
3. The need for the sentence imposed to afford adequate deterrence to criminal conduct; and
4. The need to avoid unwarranted sentence disparities among defendants with similar records

who have been found guilty of similar conduct.

<u>The nature and circumstances of the offense.</u>

The offense relates to obstruction of justice. Mr. Ybarra never made the choice to harm another person though he used words that many of us – especially with age and maturity – would not have employed. His choice to destroy evidence occurred, of course, in a context of fear and panic which was soon replaced by his decision to cooperate with the Government by surrendering two handguns that he had ordered but never taken possession of.

<u>The characteristics of the defendant.</u>

As set forth above, Mr. Ybarra is a very young man who endured extreme adverse childhood trauma and has already turned the corner as reflected in his employment, education, and attitude. He has the support of his legal guardians who rescued him from biological parents who did not provide the physical, emotional, or social support that every child needs.

<u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

The facts of this case are, to say the least, extremely unusual. There is no reason to believe that the resolution of this matter will have any impact on the decisions of others with respect to future criminal conduct.

<u>The need to avoid unwarranted sentence disparities.</u>

Mr. Ybarra is, given his age and role in the offense, the least culpable. This Court should avoid an unwarranted disparity by imposing a sentence on Mr. Ybarra which is less than that imposed on other accused in this case.

///

### IV. CONCLUSION

Mr. Ybarra's hard work and transformation stand in stark contrast to the predictions of the Government that Mr. Ybarra would exploit this Court's decision to release him by fleeing or contributing to criminal conduct by others. On the contrary, Mr. Ybarra has done everything in his power since his release to chart the right course in his life – a remarkable achievement in introspection for a 24-year-old whose life has been characterized by trauma. This Court should encourage and reward his efforts – and promote the interests of the community – by imposing a sentence of probation and home confinement that would allow Mr. Ybarra to follow through with his self-driven commitment to better his life and simultaneously honor the commitment of his guardians, Bill and Christy Kasje, who have supported him and will continue to support him through this process.

DATED: February 8, 2022                                Respectfully submitted,

                                                                             /s/
                                                                      MARTIN A. SABELLI
                                                                      Counsel for SAGE YBARRA